## MATHES v. BENNETT, Guardian.

A guardian had a right to dower in real estate which descended to her daughter, who was her ward, but she instituted no proceedings to have her dower set off, and the daughter remained at home in her mother's family. *Held*, that as the ward was not injured by such omission, and as the interest of both parties was identical, that as much income as possible should be derived from the land, the guardian should be charged with only two thirds of the income, and should be permitted to retain the remaining third to her own use, in lieu of her dower.

Where a guardian acts in good faith, upon the advice of counsel, in defending a suit against her ward, the estate of the latter is chargeable with the expenses of the litigation.

Witnesses in the Court of Probate are entitled only to the fees given by statute where witnesses testify before a justice of the peace.

The Statute of Limitations is not to be applied to the settlement of guardianship accounts.

APPEAL from the decree of the judge of probate upon the account of Catharine Bennett, guardian of Lydia Ann Stevens, who afterwards married the appellant, Reuben Mathes, now the guardian of the children of himself and the said Lydia Ann.

The reasons for the appeal were as follows :

1. Because the guardian is not charged with the income of the real estate of Lydia Ann, from March, 1816, to November 22d, 1817, during which time the guardian had the use and income thereof.

2. Because the sum with which she is charged as the income of the real estate, is too small.

3. Because she was allowed too large a sum for the support, education, and maintenance of her ward, and for the expenses of guardianship.

4. Because the balance of $283.62, with which she was charged upon settlement, is not sufficiently large.

Mathes *v.* Bennett, Guardian.

This case was referred to Mr. French as auditor, with the preceding case, and from his report the following facts appeared. The appellant contended, that interest should be cast against the guardian, upon the balance in her hands as administratrix of the estate of Joseph Stevens, from the 11th day of March, 1818, when her ward became seven years old; but the auditor, conceiving that he had no judicial discretion upon the subject, and that the Court had such discretion, neither allowed nor disallowed interest, referring the question to the Court.

The appellant also contended, that as the guardian had not her dower assigned her in the estate of the ward inherited from the husband of the guardian, although she was entitled thereto, she was chargeable with the whole income, as if she had no right of dower. But the auditor, supposing it competent for a guardian to compromise with any third person claiming an interest in the estate of the ward, upon equitable principles, reported that he saw no legal obstacle to doing justice in this case. He therefore charged the guardian, in stating the account, with one third, only, of a sum recovered by a former dowress, the whole of which should be paid by the ward, if the guardian might not retain one third of the income by reason of her right of dower.

In her account the guardian charged, and was allowed by the judge of probate, for the expenses of setting off the dower of Rebecca Stevens, and of a lawsuit with Mrs. Stevens. In relation to these charges the auditor reported the following facts.

Rebecca Stevens was the mother of Joseph Stevens, the husband of the guardian, and claimed dower in part of the estate of the ward. In the year 1818, she commenced two writs of dower, one against Lydia Ann and one against the guardian. The latter writ was entered in court, but not prosecuted beyond the second term. The writ against Lydia Ann, was carried to the Superior Court, where three pleas were filed: 1st. That no demand had been made; 2d. That the demandant was never married to the deceased; 3d. That the supposed husband was never seized; and a verdict was taken, on all the pleas, for the tenant, though not upon a full trial. The action was reviewed

17 *

and referred, and tried before the referees, *Mr. Sullivan* appearing for the demandant, and *Mr. Bartlett* for the tenant; and the referees awarded, that the demandant should have her dower, which was accordingly assigned to her in the spring of 1820. The expenses charged by the guardian were incurred in the defence of these suits.

The auditor reported, that the guardian defended the suits in good faith and in the belief that there was a valid defence, and that she employed suitable counsel and a proper agent to conduct the defences, and that they were conducted under the advice of her counsel; although the auditor was unable to see, from any evidence laid before him, what probable defence could have existed, unless under the first plea; the said Rebecca having lived with her supposed husband about half a century, as his wife, and they having resided upon the land in question about thirty years.

The only evidence before the auditor as to a demand of dower on the part of Rebecca Stevens, was the testimony of her agent, in general terms, that he made a demand before the action was brought, without stating the time or manner of the demand.

After stating the facts in relation to the guardian's right of dower, the auditor reported that she was interested in the defences to the amount of one third part thereof, and therefore, in stating the account, he charged the estate with two thirds only of such expenses.

The appellant objected to the sums allowed by the judge of probate for the travel and attendance of witnesses at the hearing before him, they being taxed as witnesses in the Court of Common Pleas are taxed. The auditor reported that the witnesses were necessary for the protection of the rights of the guardian; and as the fees were not established by statute, he allowed the charge as made.

The appellee contended, that all claims against her were barred by lapse of time, but the auditor overruled the objection.

Upon the guardianship account, the judge of probate decreed that there was a balance due the guardian of $283.62.

The auditor reported that the balance due her was $447.73.

*Stickney & Tuck*, for the appellant.

1. The first point we make is, That the guardian should be charged with the balance in her hands as administratrix, as of March 11, 1818, and that interest should be cast upon that balance for one year, and the interest and the income of the real estate for that year added to that balance, from which the expense of supporting the ward for the year should be taken out, and the balance thus made should be carried forward, and form the principal for the next year, on which interest should be cast for the next year, and so on from year to year. The guardian should be charged, yearly, with the interest of the personal estate and the income of the real estate; which interest and income should be applied, yearly, to the support of the ward, and if that is not sufficient, such part of the principal could be taken as was necessary. On this point, see 2 Wend. 77; *Fay* v. *Howe*, 1 Pick. 527; *Boynton* v. *Dyer*, 18 Pick. 1. The auditor allowed no interest on the personal estate, giving as a reason, that he found a balance due the guardian, and allowed no interest on either side; but that was not a sufficient reason for not charging the guardian with interest on the personal estate while there was a balance in her hands; because the guardian had no right to make advancements to her ward and charge interest upon them. She certainly would not be entitled to interest on advancements until she settled her account. A guardian cannot pay money or make advancements for his ward, and let it remain for years without settling an account or informing his ward of it, and then settle his account and charge interest on those payments. If a balance should be found due to the guardian, upon such settlement, he would be entitled, perhaps, to interest upon that balance from the time of the settlement. The question of interest was very fully considered in *McIlvane* v. *Wilkins*, 12 N. H. Rep. 474. Upon no principle stated by the court in that case, or in any case referred to by the court, is the guardian in this case entitled to interest in case any balance should be found due to her. The general principle decided by the court was, that interest was to

be allowed only in cases where money was wrongfully detained. It was allowed after a demand was made ; after judgment was recovered ; after the time fixed for the payment was passed, and in other cases.   But this case comes within none of those principles.   There has been no wrongful detention of money by the ward.   It does not appear that she ever knew that her guardian had any claim or account against her ; but on the contrary it is evident that the ward and the appellant supposed that the guardian was, in fact, indebted to her ward, or he would not have cited her to settle her accounts.  The guardian was guilty of negligence and fault in delaying the settlement of her account for such a length of time.   It was her duty to settle her account in proper season, and not the duty of the ward to cite her to settle it.   The law as to guardian and ward was made for the protection and security of the ward, and not for the benefit of the guardian.   The fault was on the part of the guardian ; and to allow her interest on any balance which she might be able to support or make out, after the death of her ward and after the evidence in regard to the business is lost, would be unjust, and contrary to repeated decisions of this Court upon the question of interest.   It would be establishing a bad precedent ; because the ward would be almost certain to lose by such long delays, and the guardian would have the advantage, as the facts are known to him, and not to the ward.

2. The second point is, That the guardian, not having had her dower assigned her during the time she was guardian, was not entitled to any part of the income of the real estate, but should have been charged with the whole income thereof.  A widow, having a right of dower in real estate, has no right to enter upon or interfere with it, until her dower has been assigned. *Windham* v. *Portland*, 4 Mass. 384; *Sheafe* v. *O'Niel*, 9 Ib. 13 ; *Hildreth* v. *Thompson*, 16 Ib. 191.   Guardians, administrators, or sheriffs, are not allowed to purchase any articles which they are authorized to sell.   *Lovell* v. *Briggs*, 2 N. H. Rep. 218; *Currier* v. *Greene*, Ib. 225 ; *Perkins* v. *Thompson*, 3 Ib. 144 ; *Brackett* v. *Tillotson*, 4 Ib. 208.   Upon the

same principle, a guardian should not be allowed to make any bargain with her ward where her own interest may conflict with that of her ward. We ask the attention of the Court to the remarks of the court in *Lovell* v. *Briggs*, 2 N. H. Rep. 219 & 220, upon this point.

3. The third point is, That by the marriage of the guardian with Mr. Bennett, in the spring of 1820, her trust as guardian was extinguished. She was no longer guardian, and had no right or power to do any act as guardian. By the common law, if a *feme* guardian married, her husband became guardian in her right. 2 Bacon's Ab. tit. Guardian, E.; *Wright* v. *Wright*, 2 Mass. 109. By the marriage, the legal existence of the wife was, in a measure, lost or suspended, and all her property and rights passed to her husband, either absolutely or during the coverture. She could maintain no action in her own name. She could have no control or management over her own property; but her husband acquired an absolute right to all her personal property in possession, and to the use and income of her real estate during the coverture, and to all her *choses in action*. In short, all her rights, by the marriage, passed to the husband, and were under his control and management. 2 Kent's Com. 129; 1 Black. Com. 442. When the guardian married Bennett, in 1820, all her rights and power as guardian ceased; and if not absolutely extinguished, passed to her husband. He then acquired all the right and power over the person and property of the ward, that the guardian had before. The guardian put herself under the control of her husband, in a dependent position, altogether inconsistent with her trust as guardian. She could do no act, after the marriage, binding upon her ward or her estate; and the sureties on her bond would not be liable for any acts of hers after her marriage. The sureties are liable for her fidelity only so long as she continued guardian; so long as her right and power to act as guardian continued. When the relation of guardian and ward ceased, or her right and power to act as guardian ceased, the liability of sureties necessarily ceased. Suppose the guardian had been removed, or her ward had become twenty-one years of age, it will be admitted, at

once, that the sureties would not be holden for any acts of the guardian after the happening of either of those events. The marriage, by operation of law, took from her all right and power to act as guardian, and transferred it to her husband, if it was not extinguished ; and she would have no more right to act as guardian than she would have if she had been removed. Bennett succeeded to all her rights, and what was done afterwards, was done under his direction and by his authority. The ward, after the marriage, lived in the family with her mother and her husband, and was boarded and clothed there by Bennett ; and Bennett had the use and income of all her real estate, and occupied it with his own, without keeping any account of the income, or of her board and clothing. To whom, then, was the ward indebted for her board and clothing, and who was accountable to her for the use and income of her real estate ? There can be no doubt that she was indebted to Bennett for her board and clothing, and Bennett was accountable to her for the use of her real estate. We object, therefore, to all the items in her account which accrued subsequent to her marriage. We contend that she should not charge those items in her account, because she was not guardian when they accrued. The relation of guardian and ward between her and her former ward did not then subsist, and consequently the Probate Court had no jurisdiction over transactions which took place between her and her former ward, after that time. For those, she has her remedy at law, and not in the Probate Court. Her account should be settled and stated according to the rights of the parties at the time she ceased to be guardian, which was at her marriage. Whatever debts accrued afterwards, were due to Mr. Bennett, and not to her. Mr. Bennett had the legal claim and the right of action. He was her legal guardian, if there was any. He boarded and clothed her, in fact, and he had the use of her real estate. It would seem to be clear, therefore, that Mrs. Bennett could have no legal claim or right of action against her for those items, which were in fact furnished by Bennett. Suppose a balance was due the ward for the use of the real estate by Bennett after the marriage. Could Mrs. Bennett be charged with, or her

sureties be liable for, that balance? We think not; and if not, the ward certainly ought not to be held liable to Mrs. Bennett in this account for her board and clothing, furnished by Bennett. What would prevent Mr. Bennett from settling an account as her guardian? If he was her legal guardian, we can see no reason why he could not settle an account as such. He is not a party to this proceeding and is not bound by it; and if he settled an account, he would undoubtedly have a right to charge for her board and clothing, as it was furnished by him, and would be chargeable with her real estate. The Legislature seem, from the language used, to have considered that if a *feme* guardian married, her husband thereby became guardian in her right; and the object of the statute was to prevent that. How the practice was in this State prior to our statute of July 2, 1822, whether the husband became guardian or not, we do not know; and we are not aware of any decision upon that point in this State. By the marriage the guardianship was either extinguished, or the husband became guardian in her right. She could not act as guardian afterwards, and in either event we think it is a sufficient answer and a good defence to those charges in her account for board and clothing after the marriage, that she did not furnish them. She did not board and clothe the ward, but it was done by Mr. Bennett. See *Field et Ux.* v. *Torrey*, 7 Verm. Rep. 373.

4. We object to those items in the account which were for expenses incurred in defending the action of Rebecca Stevens, on the ground that the expenses were improperly and unnecessarily incurred, as the action should not have been defended. We object also to the amount taxed for witnesses. They are entitled only to fees of witness before justices of the peace.

5. The fifth point is, That the claim of the guardian, for any balance against her ward, is barred by the Statute of Limitations, more than six years having elapsed since her ward became twenty-one years of age. The settling of her account is in the nature of an action. She claims to have allowed to her, and to have her ward charged in her account, certain sums which she paid for her ward. The decision of the Court of Probate

upon those claims, so far as they come within their jurisdiction, is conclusive upon the parties. We can see no reason why the Statute of Limitations should not be applied to such claims. She should not be allowed, in her account, for any items which are not legal claims. The delay was the fault of the guardian, and not of the ward. It was the guardian's duty to settle her account, and she should not be allowed to delay it fifteen or twenty years, and then, after the evidence is lost, make out an account and bring the ward in debt and recover it. With the ward, the case is different; the delay was not her fault; and when the account is settled, the guardian cannot object to being charged with items, because she has delayed the settlement of her account for more than six years.

*Christie,* for the appellee.

Nothing is open to the appellant here, save the matters dis‑tinctly set forth in his reasons of appeal. *Boynton* v. *Dyer,* 18 Pick. 1; *Bean* v. *Burleigh,* 4 N. H. Rep. 550. The third and fourth reasons of appeal, we submit and contend are insuffi‑cient and void, for that they contain nothing definite, specific, or tangible, and amount to nothing more than an expression of dissatisfaction with the general result, and an assertion that it is wrong. If these reasons or either of them be sufficient, it would in all cases be sufficient to allege that the result is wrong, and the party is dissatisfied with it, which is not believed to be enough; the object of the law requiring reasons of appeal to be assigned, is to give information to the other party and the Court, of the particulars in which it is alleged or believed that the decree below is erroneous. If this be so, there is nothing open in this case, but the inquiry whether enough has been charged upon the guardian for the income of the real estate. *Bean* v. *Bur‑leigh,* 4 N. H. Rep. 550. And in relation to the matter of the income of the real estate, the auditor, upon very full investiga‑tion and examination of the matter, finds that the guardian should be charged for the income of the ward's real estate, from the time of the decree of the intestate, March 11th, 1816, to the marriage of the ward; in all the sum of $400, which is $74

less than the sum charged upon her therefor, by the judge of probate. Here, if we are right as to the character of the third and fourth reasons of appeal, and the auditor is right in allowing the widow one third part of the income of the real estate, the whole inquiry ends ; and a balance larger by $74 than that found by the judge of probate, should be found and decreed in favor of the appellee.

1. The first point made or urged by the appellant's counsel, is, in substance, that the said Catharine is not charged with interest, or that the casts of receipts and expenditures by the guardian, have not been properly made ; and several authorities are cited to sustain this view. Our first answer to this point is, That no such point is made by, or arises out of, the reasons of appeal, and that consequently the point, if there were any thing in it, is not open here. Secondly, that neither the doctrine contended for, nor the authorities cited, are applicable to cases like the present. Where the balance has always been in favor of the ward, and against the guardian, the rule and authorities with good reason apply, are right, and are sustained by the principles of equity and justice ; because, in such cases, the balance being always against the guardian, there is nothing to counterbalance or offset the interest or the advantage the guardian derives from the use of the balance of the ward's property in his hands, and therefore he is justly chargeable with interest on such balance. But in this case, as the auditor finds, the balance has, upon an average, up to the time of the marriage of the ward in the fall of 1831, been in favor of the guardian, and ever since that time it has been largely so. This makes the case widely different, and shows that great wrong has been done the guardian in this respect, by the refusal of the judge of probate to allow the guardian the balance of interest due her upon a fair cast for the whole time, which would more than double the balance in her favor. No intelligent, honest man would for a moment, in settling his own private dealings with another, in a case like the present, contend for the rule here insisted on, that is, that interest must be cast on all items in his favor, but none on those against him.

2. It is contended, that the guardian, not having had her dower assigned and set out, is entitled to no part of the income of the real estate, and that the ward must be allowed the whole. This point we think does not arise upon any of the reasons of appeal, and is therefore not open to consideration here. But if this be held otherwise, we conceive that the view of the matter suggested and adopted by the auditor is in accordance with right reason and sound principles. While the guardian carries on her own interest in the land in common and undivided with that of her daughter and ward, she has a common interest with her ward that it shall be well managed, and the law divides the proceeds or income. This course would seem to be safer for the ward than to have the interests in the real estate severed; for then the guardian would have an interest to manage her own part better than her ward's. But the counsel says that administrators, sheriffs, trustees, &c., cannot be purchasers at their own official sales. This we admit is so ; and the reason is, that such officials are not at liberty to bring their own interest and that of those for whom they act in the sales, into direct conflict with each other. This would clearly have a tendency to induce management and dishonesty in such sales and proceedings, and thus public policy prohibits it. But in the case under consideration no such competition of interest arises, but rather the contrary. For the guardian can have but her third of the whole income, however much or little the whole may be ; and she has therefore an interest to manage it as well as may be, and make it as great as possible. The amount that she is to be charged, for the ward's two thirds, is not to be fixed by herself. She must pay what the tribunals having charge of such matters order ; and this will depend upon the evidence in each case, as well when the guardian and ward have a common and joint interest in the good management of the estate, as where the ward's interest is sole and separate. There can be no wrong done the ward by allowing this joint management of the property, and we submit, that the natural tendency is to secure and promote the good management of the common property, and thus to protect the interest of the ward.

3. The third point made by the appellant's counsel, and on which he now seems much to rely is, " That by the marriage of the guardian with Mr. Bennett in 1820, her trust as guardian was extinguished." Not admitting the consequences of the marriage to be such as the counsel alleges, it is a sufficient and perfect answer to this objection, that it is not embraced or alluded to in the reasons of appeal, or any of them, nor can in any way arise or grow out of them. This objection was never suggested at the hearing before the judge of probate, nor at the first hearing before the auditor ; though he, in his first report, suggested a query as to the effect of this marriage on the official character of the appellee, which has since been seized upon by the counsel and made the chief of his objections. I mention these facts to show that this objection was not even thought of till long after the reasons of appeal were filed and once fully acted on by the party making them, and his counsel. The Court will perceive that under the circumstances of this case, the entertaining of this objection, if the consequences would be such as the counsel contends for, would result in great wrong to this appellee ; while on the contrary, if it cannot be entertained, fair and equal justice will be done to all concerned. They will therefore feel no reluctance in holding that this objection is not open to the appellant, if such be found, upon examination of the reasons of appeal, to be the fact.

4. We say, that the guardian defended the suit against her ward under the advice and direction of very able and experienced counsel, in good faith, and with the best of motives ; employing proper counsel and agents, and paying only reasonable bills. She prevailed on the first trial, but on review lost the case. The auditor charges the ward with only two thirds of this expense ; whereas we contend and claim, that she should be charged with the whole thereof. There is no just reason why the guardian should pay any part of it. The witnesses before the judge of probate were paid court fees, and as we believe were entitled to them. Such has been the usual practice.

5. The fifth and last objection is, that if there is a balance found in favor of the guardian, it is barred by the Statute of

Limitations.   Our first answer to this objection is, that no such question arises upon the reasons of appeal, nor is any such objection thereby interposed.   Secondly, The appellant, having cited (as he did in both these cases) the appellee to appear and settle her account, thereby waived the Statute of Limitations, even if it would otherwise have been applicable to the case.   He cannot call upon her to settle the account and pay the balance, if any there be, found due from her, without subjecting his wards to a like contingency in case the balance be found against them, or their deceased mother's estate.   Thirdly, The Statute of Limitations does not apply in cases of this class, as we contend and submit.                                                   −

GILCHRIST, C. J.   According to the decision just made in the the preceding case, the guardian must be charged in the first place with the sum of $257.44, the balance in her hands as administratrix.

This is an appeal from the decree upon her account as guardian.

The first point made by the appellant is, that upon the balance in the hands of the guardian, as administratrix, on the 11th of March, 1818, interest should be cast and added to the income for each year, thus making an annual fund for the support of the ward.   The auditor has not allowed or disallowed interest, conceiving that the Court had, and that he had not, judicial discretion in the matter.   But the former report finds that there has generally been a balance due the administratrix, for the support of Lydia Ann, larger than the balance due from her; and therefore he allows no interest.   The decision in that case must govern us in the present case, and this point must be overruled.

The second point is, that the guardian should not be allowed to retain any part of the income of the real estate on account of her dower, as it was not assigned while she was guardian. She had a right of dower, but she had instituted no proceedings to have it established.   This might have been done at any time. How is the ward injured by the omission ?   The pecuniary result would have been the same in either case.   It would be a most inequitable advantage to give the ward over the guardian, the

daughter over the mother, to permit the ward to have all the income, when the omission has caused no injury, and when the relative condition of the parties might somewhat explain the delay. We have not discovered that the principle of the case of *Lowell* v. *Briggs*, 2 N. H. Rep. 219, 220, to which we have been referred in argument, applies here. That case states, that a guardian's conduct should be carefully scrutinized when he purchases property of his ward; but no purchase or contract exists in this case. There is no conflict of interest here in relation to the income, but the interests of the two parties are identical. There would be more conflict if the dower had been assigned, so that the land should have been occupied in severalty.

The third point is, that the marriage of the guardian with Bennett in 1820 extinguished the trust, and her power to act as guardian. This point must be overruled, for the reason stated for overruling a similar position in the former account.

The fourth point is, that the expenses of defending the suit brought by Rebecca Stevens against the ward should not be allowed, because they were improperly and unnecessarily incurred. The auditor states, that he is not aware of any defence that could have been made. But the defendant's counsel thought differently, and the auditor finds that the suit was defended in good faith, and under the advice of competent counsel. The case of *Smith* v. *Bean*, 8 N. H. Rep. 15, is conclusive upon this point. There the guardian prosecuted an unfounded claim on behalf of his ward, and the court express surprise that any controversy should have arisen. But the guardian believed the claim to be a valid one, and consulted counsel, who advised the prosecution of the claim. A result was reached at first favorable to the ward, which the court considered "sufficiently astonishing," but further investigation showed that result to be incorrect. But it is said by the court, as we say here, "under all these circumstances, can we say that the guardian acted in bad faith, or so imprudently, that the expenses of the litigation should fall upon her?" We think they should not. The appellant also objects, that the fees of the witnesses in the

18*

Court of Probate, should be only those taxable before a justice of the peace. The fees of witnesses in all cases, except when they attend the Superior Court or Court of Common Pleas, must be those only which are taxed before a justice. This includes the fees of witnesses in the Probate Court, before auditors, &c. &c. This item must be disallowed, so far as it exceeds the amount taxable before a justice. The statute does not authorize such fees as are here charged, except in the Superior Court, or Court of Common Pleas. Rev. Stat. 472, § 12.

As to the Statute of Limitations, which the appellant contends should apply to all the guardian's charges more than six years old, we are not aware that it has been applied to such cases, and the counsel refers us to no authorities. But does the Statute of Limitations ever apply where no action is brought? We are not aware that it does. Here no action is brought, and no plea could be pleaded of the Statute of Limitations. It could not be given in evidence under the general issue, upon filing a brief statement pursuant to the statute, for there is no general issue in the case, and we think the statute does not apply to cases of this description.

The decree of the judge of probate, which finds a balance due the guardian of $283.62, must be reversed.

The decree of this Court is, that there is a balance due her of $447.73, which is to be allowed her upon the final settlement of her account, deducting therefrom, however, the difference between the sum of $17 allowed by the auditor for fees of witnesses in the Court of Probate, and the amount of such fees taxed as if the witnesses had testified before a justice of the peace.

The decree of the judge of probate is affirmed as to the other matters specified in the appeal. Costs are to be taxed for the guardian, and the case is remitted to the Court of Probate for farther proceedings.